**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN A. RILEY, JR., | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-233 Erie |
| v. | ) | |
| | ) | |
| ERIC K. SHINSEKI,<br>Secretary, Department of Veterans Affairs,[1] | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

Presently pending before the Court is the Defendant's motion for summary judgment.

## I. BACKGROUND

Plaintiff, John A. Riley, Jr., ("Plaintiff"), was employed at the Erie VA Medical Center ("Defendant" or "Erie VAMC") from May 1993 until his termination effective November 26, 2005. See Def. Ex. 1, Riley Dep. pp. 1; 43; 61. As of the date of his termination, Plaintiff's job title was Information Technology ("IT") Specialist and he was part of the Information Systems ("IS") Team that supervised major information management functions, including standards development, VistA systems management, automated information systems security management and network management for the medical center and affiliated entities. Def. Ex. 1, Riley Dep. pp. 52; 65; Def. Ex. 3. Plaintiff's job description indicated that he was to spend approximately forty percent of his time exercising independent judgment resolving a wide variety of problems that might be encountered in managing the network. Def. Ex. 3. In this capacity, Plaintiff was required to periodically implement changes to prevent problems, analyze system malfunctions and implement necessary corrective action. Def. Ex. 3. Approximately sixty percent of his duties involved Systems Administration, which required him to maintain hardware and software to ensure the availability and functionality of systems. Def. Ex. 3.

---

[1]Erik K. Shinseki succeeded Dr. James B. Peake as Secretary of the Department of Veterans Affairs on January 21, 2009. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Shinseki is automatically substituted for Dr. Peake as the party defendant in this case.

Between 1999 and 2000, two of the Plaintiff's co-workers, Joyce Counts and Ila Tordoff, filed a sexual harassment complaint with the Equal Employment Opportunity Commission ("EEOC") against the Erie VAMC ("Counts I"). Def. Ex. 1, Plaintiff's Dep. pp. 4; 9. Ms. Counts subsequently filed a second complaint with the EEOC ("Counts II"). Def. Ex. 1, Plaintiff's Dep. pp. 9; 21. Plaintiff provided testimony in support of Ms. Counts with respect to her first EEOC complaint and also provided testimony on November 10, 2004 with respect to her second EEOC complaint. Def. Ex. 1, Plaintiff's Dep. pp. 4; 9; 11; 21.

*A. Plaintiff's suspension*

In a series of emails from March 8, 2005 through April 1, 2005, Tracy Knox, the Erie VAMC Clinical Services Supervisor, advised upper management of her concerns regarding the Plaintiff's failure to meet installation deadlines for the V-Tel systems at the Crawford and Warren VA Community Based Outpatient Clinics ("CBOC"). Plaintiff's Ex. 9. As a result of Knox's complaints, John Duemmel ("Duemmel"), the Associate Director of Business Operations, recommended that the Plaintiff be suspended for three (3) days. Def. Ex. 7. In his letter dated May 25, 2005, Duemmel advised the Plaintiff as to the following:

> Your failure to meet the established deadlines had a direct impact on patient care. The V-tel enables the medical center to provide behavioral health care to patients who wouldn't otherwise be able to take advantage of these type services. Your failure to install the V-Tel's on time and properly decreased the medical center's ability to provide services to patients with behavioral health disorders and had a negative impact on the facilities behavioral health performance measures.

Def. Ex. 7, ¶ 1.

Following his receipt of Duemmel's letter, Plaintiff contacted an EEOC counselor on June 2, 2005. Def. Ex. 1, Plaintiff's Dep. p. 93. On June 6, 2005, Plaintiff forwarded a letter to Dr. Michael Adelman ("Adelman"), the Acting Medical Center Director at the time and the ultimate decisionmaker with respect to the Plaintiff's suspension. Def. Ex. 1, Plaintiff's Dep. pp. 85-86. In his letter, the Plaintiff claimed he encountered problems completing the project because he lacked the necessary expertise to do so, and also because of the time demands placed upon him by other work-related projects and personal family matters. Plaintiff's Ex. 8. Finally, Plaintiff indicated that Brian Wilshire ("Wilshire"), his immediate supervisor, had been "keenly"

aware of all of these circumstances and consequently, his suspension was not warranted. Plaintiff's Ex. 8.

On July 11, 2005, Adelman sustained the Plaintiff's suspension. Def. Ex. 8. On that same date, Plaintiff filed his EEOC complaint alleging that his suspension was in retaliation for his testimony in Counts I and Counts II. Def. Ex. 8. Plaintiff subsequently served his suspension from July 18, 2005 through July 20, 2005. Def. Ex. 1, Plaintiff's Dep. p. 85.

*B. Plaintiff's termination*

On May 24, 2005, employees reported to the IS Team that they were unable to connect to their U:/ drives to access their files. Def. Ex. 12. This problem persisted for three (3) days and resulted in numerous staff members loss of data. Def. Ex. 1, Plaintiff's Dep. p. 106; Def. Ex. 12. It was subsequently determined that the incident occurred because the servers had not been backed up since March 11, 2005. Def. Ex. 12.

On July 22, 2005, Plaintiff was notified in a letter from Valarie Delanko ("Delanko"), who had replaced Duemmel as the Associate Director of Business Operations, that the Erie VAMC proposed to remove him from his position as IT Specialist as a result of the server crash and loss of data. Def. Ex. 12. This letter explained in detail the reasons for the proposed termination, which were based on four "Charges": (1) Loss of Government Property through Carelessness or Negligence; (2) Careless or Negligent Workmanship Resulting in a Delay of Operations; (3) Failure to Follow Instructions; and (4) Failure to Follow Procedure. Def. Ex. 12.

Plaintiff responded to Adelman on August 5, 2005. Plaintiff's Ex. 22; Def. Ex. 1, Plaintiff's Dep. p. 114. Plaintiff claimed in his response that he had not been assigned specific responsibilities by his supervisor; that there was a conspiracy afoot to discredit him; and that Erie VAMC had "created or condoned" the use of falsified documents as evidence to support his termination. Plaintiff's Ex. 22. Adelman subsequently appointed Chris Helsel ("Helsel"), a supervisory IT specialist from the VA Medical Center in Altoona, Pennsylvania, to conduct an independent investigation into the incident and make recommendations as to the appropriate course of action. Def. Ex. 1, Plaintiff's Dep. pp. 114-115; Def. Ex. 6, MSPB hearing testimony, pp. 244-46; Plaintiff's Ex. 46.

Subsequent to Helsel's investigation, he issued Findings of Fact, Conclusions and

Recommendations on October 7, 2005. Def. Ex. 15. Helsel concluded, *inter alia*, that Plaintiff, "upon finding issues in the back-up routine" was capable of addressing the problem but failed to do so, thereby protecting the data. Def. Ex. 15 Conclusion 3. Specifically, Helsel concluded that:

> 21. Mr. Riley adknowledged (Exhibit 23, (pg 13)) and demonstrated a working knowledge of BackUp Exec by creating new back-up sets and devices (Exhibits 1 and 23 (page 24), 26, and 27) and restoring files and folders (Exhibit 23, pg (25)).
>
> a. Mr. Riley, aware of the problem, failed to take corrective action. Given the criticality of the task, even with the threat of possible disciplinary action, Mr. Riley had responsibility to the medical center to insure that back-ups were running, valid and data stored on network servers was protected.
>
> b. Mr. Riley's lack of corrective action on back-ups resulted in losing two (2) and one-half (½) months of data when the RAID-5 set on CLU2 failed.

Def. Ex. 15 ¶ 21. Helsel's report also included, *inter alia*, the following recommendations:

> 1. Appropriate disciplinary or other administrative action should be taken with respect to Mr. Wilshire's oversight of IT Program and failure to perform the requirements of his position. His lack of oversight compromised the effectiveness of IT Program and resulted in an indirect loss of a significant amount of data for the medical center[.] (Facts 1, 5, and 7 and Conclusions 1, 2 and 4).
>
> 2. Appropriate disciplinary or other administrative action should be taken with respect to Mr. Riley's inaction when discovering issues with back-up procedures. As a Senior IT Specialist, Mr. Riley had the ability and responsibility to not only report, but fix the back-up problem. Mr. Riley's lack of action resulted in the direct loss of medical center data. (Facts 3, 4, and 6 and Conclusions 1 through 3).

Def. Ex. 15 Recommendations 1 and 2.

Plaintiff provided a written response to Helsel's report to David Wood ("Wood"), who succeeded Adelman as the Acting Medical Center Director in September 2005. Def. Ex. 48; Plaintiff's Ex. 1, MSPB hearing testimony pp. 282-83; Plaintiff's Ex. 27; Plaintiff's Ex. 48; Def. Ex. 1, Plaintiff's Dep. pp. 135-36. In his response, the Plaintiff claimed that the investigation was flawed because the Erie VAMC failed to preserve evidence allegedly helpful to him and that contrary to Helsel's conclusion, his responsibilities relative to backing up the system were less than clear. He also claimed, in essence, that disciplinary action against him was unwarranted because Wilshire, his immediate supervisor, had been aware of the back-up failures. Plaintiff's

Ex. 48.

On November 21, 2005, Wood informed the Plaintiff that he would be terminated effective November 26, 2005. Plaintiff's Ex. 56. In reaching this decision, Wood informed the Plaintiff that he had carefully considered his oral and written replies, along with all the evidence developed, as well as his past disciplinary record. Plaintiff's Ex. 56. In a related disciplinary action, Wood demoted Wilshire from his supervisory position effective December 11, 2005. Def. Ex. 1, Plaintiff's Dep. p. 148; Def. Ex. 16; Def. Ex. 6, MSPB hearing testimony p. 143.

Plaintiff filed the instant lawsuit *pro se* alleging that his suspension was in retaliation for his previous testimony in Counts I and II and that his ultimate termination was in retaliation for his testimony in the Counts proceedings and/or for his own EEOC activity commencing in June 2005. Defendant contends that it is entitled to summary judgment on two grounds. First, that the Plaintiff has failed to make out a prima facie case on his retaliation claims based upon the alleged lack of temporal proximity between the Plaintiff's protected activity and the subsequent adverse employment actions. Alternatively, Defendant argues that the Plaintiff has failed to raise a triable issue of fact relative to pretext as to both his suspension and termination.

## II. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting

Matsushita, 475 U.S. at 587).

Additional consideration must be given to the fact that the Plaintiff is proceeding *pro se* and, as a result, is held to a less stringent standard than trained counsel. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Accordingly, the Court "will apply the applicable law, irrespective of whether [Plaintiff] has mentioned it by name," Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.2003) (citing Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002)). At the same time, I am cognizant that, while "district courts are counseled to liberally construe pro se pleadings, all parties must follow the Federal Rules of Civil Procedure." Thomas v. Norris, 2006 WL 2590488, at *4 (M.D. Pa. Sept.8, 2006). See also Zilich v. Lucht, 981 F.2d 694, 696 (3d Cir.1992) (noting that despite liberal construction of the complaint, *pro se* plaintiff "still has before him the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'") (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

## III. Discussion

Title VII prohibits an employer from discriminating against an employee because, *inter alia*, that individual "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim under Title VII is governed by the familiar burden-shifting three-step framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and further refined in Texas Dept. Of Community Affairs v. Burdine 450 U.S. 248, 252-53, (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1983). Under this paradigm, a plaintiff must first establish a *prima facie* case of retaliation, to wit: (1) that he engaged in protected activity; (2) an adverse employment action was taken; and (3) there was a causal connection between the protected activity and the adverse action. Moore v. City of Philadelphia, 461 F.3d 331, 340-42 (3rd Cir. 2006).

Proof of causation can be established in a number of ways. Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3rd Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3rd Cir.), cert. denied, 522 U.S. 914 (1997). Temporal proximity between an employee's protected activity and an adverse employment action can be sufficient to establish causality for

purposes of a prima facie case of retaliation if it is "unusually suggestive." Compare Jalil v. Avdel Corp., 873 F.2d 701, 708 (3rd Cir. 1989) (holding that two days between protected activity and an adverse action is "unusually suggestive" of retaliatory motive) with Andreoli v. Gates, 482 F.3d 641, 650 (3rd Cir. 2007) (five month time period, without additional evidence, insufficient to raise an inference of casuation); LeBoon v. Lancaster Jewish Community Center Association, 503 F.3d 217, 233 (3rd Cir. 2007) (gap of three months, without more, cannot create an inference of causation); Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 760 (3rd Cir. 2004) (two months not "unusually suggestive"), cert. denied, 544 U.S. 961 (2005); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3rd Cir. 2003) (three weeks between complaint and termination letter not "unusually suggestive"); see also Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'... . Action taken (as here) 20 months later suggests, by itself, no causality at all."). Absent temporal proximity, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." Kachmar, 109 F.3d at 177.

Timing and proof of antagonism are not the only methods by which a plaintiff can make out a prima facie showing of causation. As stated by the Third Circuit in Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3rd Cir. 2000), "it is causation, not temporal proximity [or evidence of antagonism], that is an element of [p]laintiff's prima facie case, and temporal proximity [or antagonism] merely provide an evidentiary basis from which an inference [of causation] can be drawn." Farrell, 206 F.3d at 281 (quoting Kachmar, 109 F.3d at 178). Thus, other circumstantial evidence can support an inference of causation, such as inconsistent reasons by the employer for the adverse action, differential treatment of other employees, inconsistencies in the defendant's testimony, and refusals to provide a reference for the plaintiff. Farrell, 206 F.3d at 280-81. In sum, there are "no limits on what [courts can] consider" in determining whether the causation requirement has been satisfied. Id. at 281.

Once a *prima facie* case is established, the employer must then articulate a legitimate,

non-retaliatory explanation for the challenged employment decision. Moore, 461 F3d at 342. If it does, then "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id., quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3rd Cir. 1997). In this regard, the plaintiff must point to some evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3rd Cir. 2000); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 331 (3rd Cir. 1995).

The plaintiff can establish the first prong by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994) (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3rd Cir. 1992)). A plaintiff may not, however, "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3rd Cir. 1997) (quoting Fuentes, 32 F.3d at 765). In other words, the plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1109.

To satisfy the second prong, the plaintiff must point to evidence "that proves ... discrimination in the same way that critical facts are generally proved -- based solely on the natural probative force of the evidence." Keller, 130 F.3d at 1111. For example, an inference of pretext can be demonstrated under the second prong of Fuentes by showing that the employer in the past subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not within his class more favorably, or that the employer discriminated against other members of his protected class. Fuentes, 32 F.3d at 765. I will first address the Defendant's motion with respect to the Plaintiff's suspension.

Here, the Plaintiff's testimony in Counts I and Counts II predated his letter of suspension

by at least four and six months respectively. The temporal proximity between the Plaintiff's protected activity and subsequent suspension is so patently remote that no inference of causation can be properly drawn. Plaintiff claims, however, as evidence of an alleged "pattern of antagonism," that Wilshire's behavior and attitude towards him changed following his testimony in the Counts EEOC proceeding. See Plaintiff's Brief pp. 15-16. However, the Plaintiff's perception as to an attitudinal change which is not linked to any specific instances of adverse conduct is insufficient. Moreover, it is important to note that Wilshire was at no time a decisionmaker relative to the Plaintiff's suspension, or for that matter, his ultimate termination. Summary judgment is appropriate therefore, based on the Plaintiff's failure to have made out a prima facie case relative to his suspension claim.

Even if a prima facie case had been made out, summary judgment would nevertheless be appropriate based on the Plaintiff's failure to raise a triable issue of fact under the Fuentes burden shifting analysis. The Defendant's refusal to modify the suspension based on the Plaintiff's contention that he was overworked and had pressing family problems does not raise an inference of pretext. Nor is the Plaintiff's contention that Wilshire "concocted" evidence of a counseling session in February 2005 sufficient to raise a triable issue of fact as to pretext. The dispute as to whether the counseling session in fact, occurred, is largely immaterial because Wilshire was not a decisionmaker. Moreover, although the record is silent on the extent to which Adelman relied on the counseling session of February 2005, there is no evidence to suggest that he knew or reasonably should have known that the counseling session had not occurred.

With respect to the Plaintiff's termination, Defendant contends that the Plaintiff has failed to establish a prima facie case based on an alleged lack of temporal proximity between the Plaintiff's protected activity and his termination. Here, the Plaintiff contacted the EEOC on June 2, 2005 and subsequently filed his complaint on July 2, 2005. Given the relatively brief seven-week period between the Plaintiff's first contact with the EEOC and his letter of termination on July 22, 2005, I will assume, *arguendo*, that a prima facie case of retaliation has been made out.

Plaintiff's claim fails however, under Fuentes and its progeny. Fundamentally, a careful review of the record reveals that the Plaintiff simply disagrees that the Defendant's decision to terminate him was correct. Significantly, he concedes that he has no evidence that Helsel, the

independent investigator who recommended disciplinary action, was motivated by retaliatory animus. Plaintiff made that clear at oral argument:

> • • •
>
> THE COURT: I guess my question is this. Where in the record, because they ultimately acted on his recommendation, where in the record can I find evidence that Mr. Helsel had an ax to grind with you or was acting from a retaliatory motive because of the fact that you had previously testified in Counts I and II or filed you own EEOC complaint?
>
> MR. RILEY: To be perfectly honest, you Honor, I never listed Mr. Helsel as having any sort of retalitory animus against me.
>
> • • •
>
> MR. RILEY: I guess on the surface we can say Dr. Adelman meant well in convening this administrative board of investigation, this AIB. ...
>
> • • •
>
> THE COURT: ... But tell me if this is accurate. You strongly disagree, in the strongest possible terms, with the conclusions that Mr. Helsel drew, is that fair enough?
>
> MR. RILEY: Absolutely, you Honor.
>
> THE COURT: Okay. And when you use[d] the term bias a minute ago, I take it you weren't suggesting you were aware that he's personally motivated against you in any way?
>
> MR. RILEY: No, sir.
>
> • • •
>
> THE COURT: All right. Now, when all is said and done, I mean his report goes on for a number of pages, but essentially insofar as you are concerned, he concluded that you were aware of the data situation, and in your position, whoever had ultimate responsibility for backing up, a point that he didn't conclusively resolve, his essential point was you, in your position as an IT Specialist, had a responsibility to blow the whistle or call it to somebody's attention?
>
> MR. RILEY: That's exactly what Dr. Adelman's expectation was, you Honor, and I met that expectation, fix it or report it. I asked my supervisor should I fix it, he said no, you keep doing what you're doing, I'll fix it. He never fixed it, not once, but twice. The same as the hard drive.

> THE COURT: In other words, your position was well, I told Wilshire that the thing ain't right and we got a problem here and somebody's got to do it. And you didn't get anywhere. But you did try to blow the whistle, so to speak, on the problem?
>
> MR. RILEY: Yes, I did, your Honor.
>
> THE COURT: His position, meaning Helsel, comes back and says essentially that doesn't matter, you had an obligation, you shouldn't have been worried about discipline, you knew there was a ticking time bomb and you didn't push the issue; that was his position, right?
>
> MR. RILEY: Exactly, you Honor.
>
> THE COURT: All right. And on that point you and he have a fundamental difference of opinion?
>
> MR. RILEY: Yes, sir.
>
> • • •

See Hearing Tr. pp. 40-44 [Doc. No. 34].

Contrary to the Plaintiff's contention, the evidence does not support the Plaintiff's contention that Wood merely "rubber-stamped" Helsel's Findings and Recommendations. Plaintiff's Brief pp. 23-24. The "rubber-stamp" theory refers to a situation in which a decisionmaker gives perfunctory approval for the adverse employment action explicitly recommended by a biased subordinate. Elston v. UPMC-Presbyterian Shadyside, 2007 WL 3120291 at *5 (W.D.Pa. 2007). If those exhibiting discriminatory animus influenced or participated in the decision to terminate the plaintiff, the employer may be held liable for a subordinate's prejudice even if the decisionmaker lacked discriminatory intent. Id.; see also Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 286 (3rd Cir. 2001); Parker v. Verizon Pennsylvania, Inc., 309 Fed. Appx. 551, 559 (3rd Cir. 2009). First, there was nothing perfunctory about Wood's actions. He considered both an oral and written response from the Plaintiff and carefully reviewed the evidence. Plaintiff's Ex. 1, MSPB hearing testimony, pp. 283; 307-312; 318; 320-321. More fundamentally, however, as previously discussed, Plaintiff himself concedes that Helsel was not driven by retaliatory animus in conducting his investigation.

Nor does the record support a reasonable inference of retaliatory animus on the part of

Wood. The fact that Wood "discounted" the Plaintiff's "entire list of arguments" in response to Helsel's report, see Plaintiff's Brief pp. 23-24, is hardly evidence of discriminatory animus. Nor is the fact that Wood did not find the Plaintiff credible in all respects. Plaintiff's Ex. 1, MSPB hearing testimony p. 323.

Finally, Plaintiff contends that he was treated disparately from Wilshire and therefore an inference of discrimination is properly raised. I disagree. Evidence that an employee was disciplined more severely is relevant only if the comparator and the plaintiff are "similarly situated." Maull v. Div. of State Police, 39 Fed. Appx. 769, 773 (3rd Cir. 2002), citing Fuentes, 32 F.3d at 765. Plaintiff and Wilshire were not similarly situated. Not only was Wilshire a supervisor, but the Plaintiff failed to introduce any evidence of Wilshire's prior disciplinary record, if any. Finally, the record does reflect that following the discovery of a second incident in 2007, Wilshire was informed on October 1, 2007 that he was being terminated as a result of, *inter alia*, failing to perform routine back-ups and insuring that the servers were backed-up. Def. Ex. 16. For the foregoing reasons Defendant's motion for summary judgment is granted.

## IV. CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN A. RILEY, JR., Plaintiff, | ) | |
| v. | ) | Civil Action No. 07-233 Erie |
| ERIC K. SHINSEKI, Secretary, Department of Veterans Affairs, Defendant. | ) | |

**ORDER**

AND NOW, this 10th day of September, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment [Doc. No. 21] is GRANTED. JUDGMENT is hereby entered in favor of the Defendant, Eric K. Shinseki, Secretary, Department of Veterans Affairs, and against the Plaintiff, John A. Riley, Jr.

The clerk is hereby directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.